Case No. 18-8266, Ed Powell. Matthew Dunlap v. Presidential Advisory Commission on Election Integrity Ed Powell, for balance. Mr. Zinczak, for the imbalance. Mr. Stanley, for the amble. May it please the Court, Jerry Zinczak, appearing on behalf of the government. I'd like to reserve two minutes of time for rebuttal. The narrow issue presented in this case is whether this Court's decision, Cummick v. Gore, clearly and indisputably entitles plaintiff to the documents at issue. It does not, for two reasons. There are two critical distinctions between this case and Cummick. First, unlike in Cummick, the commission at issue here disbanded without issuing any final reports, recommendations, or findings. Therefore, the right at Cummick, which was tied to the commissioner's ability to fully and adequately participate in the agency's proceedings, or the commission's proceedings, by amending her dissent, doesn't apply here. There's simply nothing left for Mr. Dunlap to participate in. The second distinction from Cummick is with respect to the documents themselves. These documents are candid discussions amongst the president's advisors about potential commission members. They bear no resemblance to the type of documents at issue in Cummick. They were not the work of the commission. They were not documents the commission relied on during its deliberations. And they are not documents that the commissioner would need access to in order to fully participate in those proceedings. So for that reason alone, Cummick doesn't apply here. Certainly the separation of powers issues that would arise if the Court were to interpret Cummick as requiring these particular documents to be disclosed also weigh against interpreting it in that regard. So for either of those reasons, this Court should hold that Cummick does not apply here, and certainly not clearly and indisputably so. Why isn't it within the scope of FACA to say that if a president seeks input from some commissioners about who should fulfill a vacancy or become a chairman or chairwoman of the commission or anything of that sort, if the president seeks advice from some commissioners as to that point, then all of them should be involved? Is that part of the spirit of FACA? No, Your Honor. There is a distinction I think FACA makes between the work of the commission and the process of selecting commissioners. And about how commissioners are selected as something that should be made public or anything along those lines. Certainly in this case, specifically in this Court made clear in the AAPS case that it is about formally what has the president or the agency required the committee to do and what is its charge. So what if the e-mails were about there are going to be five subcommittees on the commission and who should share each subcommittee? Your Honor, again, that's obviously very different from what we have here, but it would be the idea of who is going to serve on the committee and what their roles are going to be is not something that the committee was assigned. It was on a role that was assigned to the committee and so therefore it is not the work of the committee. And again, as this Court said in the AAPS, the idea behind FACA is if the president is going to accept advice from a group recommendation, then we need to make sure that advice is fair and balanced because if the president wants credibility from that group, but where the president, it doesn't, FACA doesn't, you know, inhibit the president's ability to get confidential communications from individuals. And so here we have the president and his advisors asking individuals who are experts about advice about who should be appointed and that's simply not covered by FACA and it's certainly not covered by CUMMIC, which didn't involve anything, documents of this nature. In CUMMIC, the documents were the briefing books and materials that the committee relied on in producing its final report. And again, the final report was a key part of CUMMIC. It would, you know, the right recognized there was the right to fully and adequately participate in agency proceedings and the existence of a committee beyond that, beyond its dissolution, where we have nothing like that here. There are no reports, findings, or anything to participate in. So what if the documents that are withheld from the commission members are documents that would rebut one of the findings that was made in the executive order appointing the commission? It says, commission is appointed to investigate the serious problem X. And one of the documents that this commissioner was excluded from getting is a document that would show that X isn't really a serious problem. Well, again, I think, you know, we'd have to look at what the final report and recommendation of the committee would be. Well, I'm assuming that there was no final report. The commission was disbanded like this one was. Well, then I don't see why the commissioner would need access to that document to participate in the work of the commission. The commission is over. There's nothing the commission has done. There's nothing that's continuing. I'm just wondering why you're biting off so much more than you need in order to prove this case. I agree, Your Honor. The only question, just to be clear, the only documents at issue are emails about who should be on the commission. Is that right? That is correct. Government's given everything else, right? That is correct. And the executive order says the president shall appoint the commission. That's also correct. It doesn't say the president shall appoint subcommittees. So we don't know, necessarily, the answer to the question that you answered. That is, with respect to the appointment of subcommittee members, maybe that's up to the chair. Maybe that is, or maybe that's up to the committee as a whole. We don't have to know the answer to that to know that the appointment question is a separate question. I agree, Your Honor. That was an issue, which commissioners to appoint that the president reserved for himself. Just so we can be clear about documents, isn't there still disputes going on about other documents? So, yes, I mean, just to clarify, we have produced thousands of documents in this case covering a range of issues about the work of the commission, including anything that might remotely be considered a finding, which was just a draft report. The only documents on this appeal are these emails about the commission members' appointment. There are a few additional documents about internal communications in the vice president's office that are still subject to dispute in the district court. You're not appealing that. The only thing you're appealing is the emails about who should be on the commission. Is that right? We're not appealing that issue because the district court hasn't decided it yet. Well, I don't care what your reasoning is. The only thing before you now is the 20 or so emails related to the appointment of commission members. And as I said, those emails are certainly not within the scope of CUMMIC and certainly not clearly and indisputably so. And your contention also is they're not within the December order. No, Your Honor. They were not within the initial preliminary injunction order. The district court made itself quite clear on that point. And it would have been an odd appeal for us to bring at that time since we weren't contesting the preliminary injunction itself or the three categories of documents the district court ordered us to produce. So just on that as a housekeeping matter, you said in your reply brief that exercising jurisdiction over that preliminary injunction order from 2017 would have no practical effect. That's correct, Your Honor, because it was a modification. So we don't contest the preliminary injunction. I mean, we contested it below. We don't think it was proper and so forth. But we don't challenge it on appeal or the three categories of documents the court ordered us. In fact, we produced everything in those categories of documents. All we're contesting here are A, the specific 20 or so commissioner appointment emails. And we're doing it on two grounds. One, they're not covered by CUMMIC due to their substance. And then two, they're not covered by CUMMIC because the commission disbanded without issuing a report. If Your Honors have no further questions, I'll see if there's any time for rebuttal. May it please the Court, my name is Harry Sandick. I'm a partner of Patterson, Delknap, Webb & Tyler in New York. And with my co-counsel from American Oversight, we are pro bono counsel for Secretary Dunlop in this appeal. Secretary Dunlop joined the committee, joined the commission, to make contributions, to share his expertise. When he joined the commission, he was frozen out. When he sued to obtain documents, the government opposed it categorically. We made specific requests for many different categories of documents, including the very ones that are here. And as was pointed out a moment ago, many documents remain unproduced. Indeed, the bulk of the documents— The only issue for the Court is production of the e-mails regarding membership in the commission. Is that right? That's correct. That's the only category here. This was a category that we asked for at the start of the case in November 2017, when we filed our motion for a preliminary injunction. The government elected not to do a category-by-category objection to what we were seeking, but instead to oppose it entirely. That was a strategic decision. Then the district court issued an order specifying certain things, which were identified as examples, what it believed the statute and comic required. And can you point to any language in that order that encompasses e-mails relating to selection of new members of the commission? She said, and it's on pages 67 and 68 of the appendix where this is discussed, she said that we were entitled to the substantive information. I can give the report. To what information? To substantive information. To the plaintiff is entitled to substantive information. And you think that adjective, substantive, in light of the statute and so forth, encompasses anything relating to personnel? We do. And this is why. First, with respect to the statute, Section 10b, which is the relevant question. Can you back up? Where's the word substantive? Sure. It's on page JA67, and it's right above. There's a heading that says three, clear duty of the commission. Right above that, the last sentence, it says plaintiff is entitled to substantive information so that he can contribute along the way in shaping the ultimate recommendations of the commission. And then on the following page, the Court says that it's not going to go line by line through the documents that we requested, which was sensible given that the government's papers did not particularize. Actually, what it says, it has not considered line by line documents. Right. She then says the Court will give three examples in light of the record of the types of substantive disclosures the plaintiff should have received in the past and is entitled to receive in the future. And just so I'm clear, what page are you on now? Sure. I'm sorry. I'm on page 68. This is a paragraph at the top of the page. And it makes specific reference to a document that's not in the joint appendix, but is in the record, ECF number 30-6, where what we did was we identified a series of entries from an index called the Vaughan-type index that was created in a related case also before the same district court. The government essentially particularized the nature of their objections to sharing these documents. And the Court said, I'm not – I haven't considered line by line, but the substantive disclosures that the plaintiff should have received, here are three examples. And the government never – And the three examples are voter data requests, Secretary Gardner's proposals, and plans for the next meeting. Or an invitation written to guests who might have been invited to a meeting. And then it says the Commission has a clear duty to provide with these documents and any similar documents. That's right. So in what way is membership on the Commission similar to any of those? Well, it's similar because those are substantive communications about the direction of the Commission. I mean, to be fair, I haven't seen those documents. The district court, I believe, at this point has. But from the description of them in the so-called Vaughan-type index, it's clear that those relate to the direction of the Commission. Who should we add to this Commission in order to direct it in a particular way? I think everyone will agree with you, there's a sort of logical connection between who is on the Commission and what the Commission does. But I don't see anything in the initial ruling of the district court that says that because of that connection, everything that reflects on the possible future activity of the Commission, including its personnel, is encompassed. That's just an enormous jump. Well. Seems to me, anyway. The question is, is this substantive information that was generated by the Commission? That's what Section 10b talks about. The great region for substantive and procedural is an enormous controversy, is civil procedure. And there are huge controversies about it. I'm not sure how substantive gets you very far. Well, Your Honor, personnel. I'm sorry. Substantive work of the federal courts is affected by the individuals named as judges, right? I'd like to think not very much, but some people think so. Well, I'm not talking about political preference. I'm talking about intelligence and things like that. There is an effect there, right? So if someone talks about the substantive work of the federal courts, in your view, they're ipso facto talking about the selection process? In this context, the answer is yes. And the reason why is that personnel here is policy. A Commission was formed. Several members, including our client, was appointed. But the Commission continued to talk behind my client's back about who should be added. That's a different issue. Talking behind your back, your client's back. About a substantive matter. And that's what the district court in Cummick, in this court's decision in Cummick, was aimed at addressing. That the people who were added to the Commission, Bonsakowski and Adams, are people with known reputations in this area for taking one particular side of this debate we're having in our country about voter ID and voter suppression. To add them to the Commission is a substantive act. And the fact that they were discussing adding these people who are really noted advocates on one side of the dispute implicates the core purpose of FACA. Which is that, as the Court said in Cummick, these Commissions are often dominated by special interests seeking to advance their own agendas. And that's what appears to be the case. Order to be about substantive documents, right? That is... That's the way you understand it. That's right, Your Honor. Then help me on JA 216, which is the January 28th, 2019 order, in which the Court discusses the emails at issue in this matter on appeal. And describes them as quasi-procedural. Not as substantive, but as quasi-procedural. The first dot. We see that, Your Honor. But the sentence continues to say that it illuminates the ways in which the plaintiff's substantive contributions were inhibited at the time. Right. But it refers to them as quasi-procedural category of documents. It doesn't refer to them as substantive documents. They may illuminate substantive things. But why the... If it's so absolutely clear, or if it's clear at all, that these are the ones that she was referring to originally, why not refer to them in the same way she refers to the others? And particularly what's, I think, a little... It makes me think that even the Court's not clear that this was what was originally ordered, is to compare the documents. So if you look on JA 215, and you look at the ones in the first paragraph, these are the ones with categories of documents that the government conditionally offered to provide. And at the end of that paragraph, it said that these courts look sufficiently substantive that they fall within the scope of the Court's preliminary injunction. And then if you look at JA 216 with respect to a different set of emails, the second dot, the Court says they may include material the Commissioner solicited and subsequently received from third parties, which this Court has expressly instructed that the preliminary injunction covers. But when you look at the emails at issue in this case, the Court does not say they were previously covered. It seems conspicuously absent as compared to the others. Well, Your Honor, the Court cites in the first bullet point the same page or two pages in the previous... Although she uses the word quasi-procedural, she then connects it to the plaintiff's substantive contributions and his right to reply to it. The Court even pointed out earlier in response to the motion for reconsideration that essentially if the government had some concern about specific documents as being privileged or in some way inappropriate to be provided, the government could have said so either in the initial papers or even in the motion for reconsideration, and they never did that. This is page JA 129. It says their willingness, if defendants were in fact concerned about the content of other documents that they did not offer to show the plaintiff, it would have behooved them to say so in briefing the motion for reconsideration or the motion to reconsider. What happened here... You agree that the standard here is clear and indisputable right. Is that right? That is the standard. Is there any case in which any court has ever ordered production of documents relating to the formation of the and the membership of the commission, of a Federal Advisory Commission? Cummings speaks broadly to all material necessary to... Yes. Well, the question is what is necessary. Yes, totally with you. So the question is, is it necessary to the work? But here you need a clear and indisputable right to a particular kind of document. Is the answer that there are no cases? The answer is that there is no case at the level of generality, the lower level of generality that Your Honor is asking about. The level of specificity. That's right. The lower level of specificity. But in the highest level of specificity, Cummings speaks very broadly. And the reason for that, I think, I submit, is because of how broadly Rule 10b I'm sorry, Section 10b is. Section 10b says records, reports, transcripts, minutes, appendices, or other documents which were made available to or prepared by the advisory committee. So we're dealing with a very broad... I'm sorry. Sorry. You're saying that e-mails between Commission members and the President or his staff relating to appointments are other documents prepared by the committee? Yes. You're fitting it into that? Made available to or prepared by the committee. So every document the President sends to Vice President Pence, who is the chair of the committee, is covered? We are not. The short answer is not necessarily. It depends, first, on whether they are substantive documents. But, secondly, none of the documents here, despite the separation of powers argument raised by the government, the documents in the Vaughan-type index are documents between staffers. We're not seeking President Trump's e-mails. Well, they're back and forth with the Office of the Vice President. And the reason why, Your Honor, is because the Office of the Vice President was or the Vice President himself was put on a FACA-disclosable committee. They decided that. I understand you're not asking for Vice President Pence's e-mails back and forth. But is that not the implication of your argument that he's a member of the Commission and that any e-mails he sends or sent to him are covered? On the subject of Commission work, yes. So it's not possible for the President, once he appoints Vice President Pence to Commission, he can no longer seek his advice about members of the Commission without it being part of the Commission's work? You would have to go document by document. There might be certain e-mails that were not. About his advice about membership on the Commission? Just these? Just advice on membership of the Commission? Yeah. That's right, Your Honor. Because they decided to put the Vice President on a FACA-disclosable committee. No one forced them to do that. And then we have the second unusual fact here, which is that, typically, the reason why we don't have cases, Your Honor, on the subject of what happens about committee members is that typically the President or his staff will announce these are the 12 members. We don't know what it is. I mean, unfortunately or fortunately, we have no idea what the history of these committees are, whether people drop out, somebody else has to be renamed. We just don't know. I mean, there are thousands in the end of FACA committees, and we just don't know whether the answer is that they've all had their membership from the beginning or not. But the executive order says the President shall appoint additional members. It doesn't suggest anywhere that this is part of the task that the President has assigned to the Commission. In fact, its mission, Section 3 of the executive order, is just to study the registration and voting processes. It is not part of its mission, at least according to the order setting up the Commission, to select its members. Well, it became part of the work of the Commission when the commissioners and their staff essentially made it so. And the district court recognized the highly unusual nature of what happened here. She says on page 98 of the appendix that the Commission was shut down due to endless legal battles, quoting the White House, and as part of an option play, quoting the Vice Chair Kobach, and that part of the reason why she denied reconsideration was a matter of respect for the tribunal. She said the defendants, if they disagreed, should have pursued an interlocutory appeal, not followed the path they did here, to shut down the Commission, to try to freeze out Secretary Dunlap, and then go back sort of piecemeal, first seeking reconsideration, then coming back with what the government styled as motions for clarification. I understand this argument as to everything except the e-mails. So that's really the issue here. It's not about the other documents. It's only about the e-mails. And I don't know. I have to say, if I were a government lawyer reading the first, I would not have thought it covered the e-mails. It just doesn't. It's not anything like the three examples. And so we're mixing two different issues here, which is whether it's covered by the first injunction and whether it's covered by whether you have a clear and indisputable right. There's two separate questions here. Yes, Your Honor. But here, covered with the – let me take the covered within the injunction point first. This was – you read the judge's order from December 22nd. It was a sweeping order. It said entitled to substantive information so that he can contribute along the way. It cited the broadest possible language from Comey. It said Comey was a – Well, that isn't the broadest possible language. It was much broader, obviously. I mean, I can't imagine the most broadest of it. Who knows what the outer edge would be. But you're basically saying it's the equivalent of – when it talks about the substance of the commission's work, it means all the anterior processes which led to the constitution of the commission without limit. That seems a stretch by any possible use of the English language. Well, Your Honor, I wouldn't go as far as the premise of Your Honor's question. What's the difference? Well, the difference is that if you have members of the commission, once it is established, talking about who to add to the commission. In this context, personnel is policy. And a decision to add people who are noted advocates on one side of this debate implicates the reason why FACA was passed, to make sure that these commissions don't become overtaken by special interest groups dominated by one side in the public debate. But that can be assessed. People concerned with evaluating the commission from that point of view can look at who gets appointed. They don't have to have the internal communications, internal to the administration, not to the commission, about appointments. Your Honor, the documents we're seeking are not what I would describe as sort of internal to the administration. If we look in the Vaughan-type index, most of these documents are between, and I don't understand the government to be sort of, you know, drawing particularized distinctions here. But what if you have, as you often do, the vice chair, Kobach, speaking with the designated federal officer, Kosak. That doesn't intrude deeply into the administration, other than to the extent that Kosak was given this dual role. He's on the staff of the vice president, but he's also the designated federal officer and playing a leading role in the commission, a decision made by the government. So we're not seeking, you know, the President's communications on this subject. And I don't, from the Vaughan-type index, even understand any of those to be implicated. Alito, with respect to the Vaughan-type index, you asked that all them be produced, right? No, we did not ask for all of it to be produced. All the ones that you were asking, all the ones, line by line, the documents requested by the plaintiffs, right? We asked for certain categories, but not for all the categories. And the district court actually addressed that. No, I'm asking a tinier question. I'm sorry. Smaller question. On JA-68, which is a December injunction, the Court says, turning to the scope of that duty, the Court has not considered line by line the documents requested by the plaintiffs. That's what I'm talking about. Yes. You did request some number of documents from the Vaughan-type index. Correct, Your Honor. So to answer Judge Williams' question, the maximalist answer would have been produce them all. But the district court didn't say that. So the seems to me a more than reasonable implication is that you don't have to produce them all, just the ones that are substantive and similar to the ones the district court did order. There's no reason that the government should have assumed it had to produce all of them. What would be the point of saying I haven't read them, only produce the substantive ones that are like these three? Well, the Court's ruling is exactly as Your Honor says. And so then the question is whether or not the documents we're talking about are substantive documents similar in a sufficient manner to the three examples. By necessity, three examples are only three examples. And I think her expectation was that the parties would sort of work this out. What happened instead was the shuttering of the commission and the motion for reconsideration. The government never appealed the underlying order by the Court. And what the Court said in hearing the motion for reconsideration is that she would have expected the defendants to have pursued the interlocutory appeal rather than terminating the production. What she saw here was what she described as an effort, a suggested effort to evade this Court's December 22nd, 2017 order. And so she did not have any difficulty locating these within the scope of her original order. And you don't think we need to be wary at all of intruding on the President's power to make appointments and to receive advice regarding appointments? No. Is communications to the Vice President's office consistent with the President's constitutional appointment power? The answer is no, Your Honor. The cases cited by the government on the separation of powers cases are all inapposite. They are all cases of the ---- They're not inapposite. I appreciate they're distinguishable. It's not the same thing as saying that they're inapposite. The Court, it seems pretty ---- the Supreme Court seemed pretty clear that we have to take care before we intrude into a constitutional duty of the President. But, Your Honor ---- It may not be the specific one because the specific one wasn't raised in those cases. But, Your Honor, the public citizen case involved not a commission created by the executive pursuant to FACA. It involved the ABA, you know, Judiciary Advising Commission. The reason I say they're inapposite, and I don't want to hair split, I'm content to say they are very distinguishable on their facts, is because those are all cases. Cheney, public citizen, the Hillary Clinton health care case, APS, the Center for Arms Control, those are all cases where some outsider said, hey, what you have done here is created a commission covered by FACA. In this case, the President himself said, I am creating a commission covered by FACA. So the separation of powers is just ---- I can't hear an outside person. You are saying this is the work of the commission. And the question is, is this really the work of the commission? Right? That's the issue. It is. You're sure it is. Government says it isn't. But in deciding whether it's the work of the commission, don't we have to worry about whether calling advice to the President about who the President can appoint the work of the commission? Because it would ---- I'm not saying it has to completely. This is just a rule of, you know, avoidance. Because it would impact the President's ability to get advice as to who he should appoint. We don't agree, Your Honor, that this is a separation of powers issue because of what the government voluntarily did. If this were like those other cases, and we're not an outsider. It's that sentence that's critical. Yes. It's what the government did. Yes. It didn't say that everything anterior to the appointment of personnel to the commission is part of a FACA process. It never said anything remotely like that. Your Honor, what the government did was they created a commission expressly pursuant to FACA. And in that way, this Court and the Supreme Court's prior decisions like Cheney and Public Citizen and APS have, in our view, very little to do with the specific issues here. Well, they're not identical. If the President and his administration wanted to do this in a way that wasn't disclosable under FACA, and this meaning create an advisory commission, they didn't have to go about this process in the way they did. They wanted to create an independent commission. And the strategic reasons are apparent from the public record and the record in this case, which is that the administration wanted a ---- But I'm saying this is really not about this case. This decision we're going to make today, or whenever we make it, will be for every case and every President. And it will mean that the President cannot ask a member of the commission, Mr. Attorney General, not in your role as a member of this commission, but because I need your advice, we have a sudden opening, who should I appoint? And the Attorney General from now on or the Vice President from now on has to know that whatever advice he or she gives to the President will be disclosed to the public. So if he says, you know, I would have, I would have, I can't recommend this person because they have an undisclosed felony, or I wouldn't appoint this person because I just don't think the person's rational. All that will be disclosed just because of this case, even if it's all the background that you've laid out is not really part of the other case. Well, Your Honor, there may be a case in the future in which those types of documents are presented. But I submit that this isn't that type of case. And I'm just looking at my notes of some of the, you know, who was on the documents that we're talking about in the Vaughan-type index. An email between Adams and Kosak. An email between Kosak and Kobach. An email between Adams, Kobach, and von Spakovsky. To the extent that some of these people, like Kosak, were involved in addition as the Vice President's staff, that shouldn't limit a Secretary Dunlap's ability or a commission member's ability to get these documents. If we were looking at the list and we saw the President or Vice President talking exclusively with other administration people, that would be one thing. But they're bringing in either people who weren't on the commission at all and not in the administration either, or they are just commissioners and staff talking to each other. So there might be a case in the future, Your Honor, in which the hypothetical that the Court has raised would be presented. But this isn't that case. And we would also submit that the separation of powers issues are really the direct result of having the Vice President be the chair of this commission. Just as in Kamek v. Gore, the Vice President there was the chair of the commission, and no doubt there were documents touching on the Vice President that were part of the record that Kamek got. Well, Cheney was on the commission in the Cheney case. So is your position that the President cannot, again, not this case, but the next President or the next President after that? Can't put the Vice President on the commission without risking all the documents that are provided to the Vice President? Well, what we would say is that the Vice President in the Cheney case was on a working group. Yes, it was chaired by him, but it was not established as a FACA working group. That was something that an outsider, a person not on the commission said, hey, what you've created here is a FACA commission. But for the separation of powers considerations, the court might well have concluded it was a FACA working group. It was an avoidance question that was used in order to decide it wasn't. And it seems like the same question, an avoidance question, of whether the deciding on the membership is a part of the work of the FACA commission. I think the key distinction between the two cases really is that here the administration decided to create a FACA commission. And they knew what that entailed. They knew from Comey P. Gore, that was Vice President Gore, that there might be disclosable events that occur if you do that. Was Comey suggesting that communications relating to the future appointment of commission members was within its scope? That subject does not come up in Comey. No. That's right. That subject doesn't come up. The fact that they knew about Comey versus Gore doesn't tell us anything. Well, what it tells us is that they were aware from Comey, where they should have been, that once you create a FACA committee, you are opening the door. This is a disclosable committee. The question is how wide you've opened the door. And the documents here were ones that they acknowledged in the Vaughan-Type Index to be commissioned work. The way the Vaughan-Type Index was created was essentially there were 25 different categories of documents. And the government said all of them are not disclosable. These were put into Category G, emails and associated materials sent by commission members discussing staffing and potential commission members. There was a separate category called Category N, emails and documents created not in an individual's capacity as a commission member, but in the member's other professional capacity, i.e., documents received or sent in a member's capacity as Secretary of State. So the people who created the Vaughan-Type Index recognized a distinction similar to the one that Your Honor is asking about, which is you might sometimes wear one hat, you might sometimes wear a different hat. They put these into the commission. And who created it? Who created the index? I believe it was Designated Federal Officer Kosak attached to one of his affirmations. It was a government person. And this was his interpretation of the Federal Advisory Committee Act? So what he is doing is he is trying to give discrete rationales for why a document is not classified. No, I understand that question. We have a strictly legal question here that you presented to us. It's not whether in this commission this is part of the work of the commission. It's going to be in all commissions. And it's a de novo question for us to decide. I have no reason to believe the guy is even a lawyer. Maybe he is. And he certainly didn't say it's the work of the commission. You are doing that by implication. Correct? That part is by implication with what he said in a different section. That's like, you know, if the FBI agent in charge of a FOIA response answers one way rather than the other, that doesn't bind the government on a legal definition. Well, two things, Your Honor. Number one, they did put some documents into two categories. So putting it in one alone read in the context of the document we submit does exclude other categories. The second thing is that DFO COSAC wasn't creating this document sort of in the abstract without legal advice. This was submitted in another lawsuit about this commission, not brought by our client but brought by a different organization, seeking disclosure of documents. So although he's effectively the affiant to this document and he's in a position to know about the documents given his role, this was done under the auspices of the, you know, Federal Programs Branch of the Department. He's not just making this up as he goes. I see I'm quite over. I've got a question, a very basic question, which is what right is being redressed if we were to turn over these e-mails? So Cummick talks about two rights. One is essentially a right to review information, and the other is a right to amend and publish a dissent. The second one isn't at issue here, right? Well, I would disagree, Your Honor. There was the district court concluded, and I think this is a factual matter that the court should review only for clear error, that, and I'm quoting the court, a flurry of public statements comprised the commission's early epitaph. And she further continued that the press secretary made statements to the public, as did Mr. Kobach, and she said, these take the place of final findings and a final report. And our client does intend, whenever this litigation ended, which we've now been fighting for two years to get these documents, to issue a final statement on the subject of what this commission was doing, why it was created, and what the so-called, you know, initial findings. But that's not you would still get those. Nothing we say today will prevent you from getting those initial findings, right? That's not what this case, this appeal is about. That's right. But these documents do bear on what the commission was doing, why it was created, the work that it did during the time. It existed for six months. It did all sorts of incredibly controversial things that our clients made. How would these emails, I guess, provide redressability in the sense that they're going to, if we assume the premise of your question, that there's a final report or dissent that Dunlap is entitled to write, how do these emails pertain to that at all? The way they would pertain to it is that by explaining that once the commission had started and appointed a number of people, secretaries of state and I think the state court judge, the commission continued behind our client's back to contemplate additional appointments, including two of the most well-known advocates on the subject of what we believe is voter suppression. And that this personnel decision animated the work of the commission. This was a commission that Vice Chair Kobach made a sweeping request for voter ID information from basically every American across the country to be provided to the commission. This was done in Secretary Dunlap's name. He had perhaps a couple of hours' notice of it. He is entitled to tell the story of this commission from his vantage point. But it sounds from everything you're saying that he has ample material for his story. I take it an effort to show that anything said in defense of the commission is made unreliable by the process through which commissioners, who it's thought related to the appointment of commissioners. That doesn't sound like Cummock to me at all. Well, the issue, the specific issue in Cummock may not have related and did not relate to the selection of members of the commission. But here the commission took it upon itself, members of the commission, its staff director, to have conversations about who would be appointed, who would round out this commission in order to achieve the objectives of the commission. And the decisions they made are ones that are fairly within the right of Secretary Dunlap to comment on. That's why the Court said in the paragraph we were quoting before from JA 216 that it could illuminate ways in which the plaintiff's substantive contributions were limited, were, I'm sorry, inhibited at the time, and to allow him to, quote, respond accordingly after the fact. That's what we're trying to do here. But I see my time is up. Can I just ask? Oh, absolutely. The emails you're talking about are the ones you report on 2021 of your red brief, is that right? Yes. July 6, 2017 and June 14, 2017. When was the commission dissolved? The commission was dissolved on January 3rd or 4th of 2018. It lasted less than a year. It was closed down about two weeks after the district court's order, which is why she viewed the closure as an effort to evade and show the lack of respect to the tribune. Thank you. Thank you. And I have two quick points on rebuttal. With respect to whether the documents were covered by the preliminary injunction order, the only thing I would add is that the court, the district court, did grant us a state-pending appeal of these documents after having previously denied a state-pending appeal of the documents she ordered in the preliminary injunction. So if she thought they were already covered, there's no reason why she would have granted that. And also in her state order, which is docket 85, she said that the issue hadn't been presented to her or briefed before January of 2019. So I think it's pretty clear from that, as well as Your Honor's questions in the text of the order itself, that these documents weren't covered. And then the only other point I would make is that with respect to the e-mails themselves, each e-mail involves at least one member, and often more than that, of the office of vice president discussing potential commission members. So these are not e-mails between commission members or people who were members of the vice president's office. So what about this issue of Dunlap's ability to issue his own report responding to what the statements had been said about the commission's work, and these e-mails being pertinent to his ability to do that? Well, he is well aware of all the members of the commission and who was selected. And so there's nothing that prevents him from, and he in fact has written a letter to the president, or to the vice president expressing his objections to the commission, and he could explain that the people selected were, you know, he views two of the people who were selected as being, you know, biased or whatnot. He can explain that in his letter or whatnot. Have any of our previous FACA cases adopted what it seems to be your argument to be some sort of a cumulativeness objection? So even if the document would fall within FACA, if he could make his point, you know, he's not entitled to it? No, Your Honor, I don't think anything turns on a cumulative objection. We're objecting to these particular documents, even if he had received nothing else, we would still be objecting to these particular documents. It's not covered by FACA or CUMIC, but the fact that he has received hundreds of documents and thousands of pages about every aspect of the commission, you know, is more than enough information. I mean, FACA itself is an open meeting policy during the life of the commission. The idea is that you get it so the public can see what the commission is doing for itself. I guess I'm just trying to make sure I understand your argument. I mean, you're saying that he's gotten enough information to write his dissenting report if that's what he wants to do, but I don't recall seeing anything in our prior cases that say where there's enough information, you know, the member doesn't have any FACA rights anymore. No, I mean, we're not relying on the fact that, you know, the amount of information he has already received. The question is whether FACA entitles him to these particular emails about the formation of the commission, and there's no case in this court and certainly nothing in FACA itself establishing that right at all, let alone clearly and indisputably establishing the right. So, yeah, I mean, if there were additional materials that were the actual work of the commission and the commission hadn't disbanded without a report and so forth, it wouldn't matter if they were cumulative to other materials he had, per se, but that's not what we have here. These are not documents covered by FACA or CUMIC. Okay, thank you very much for a very interesting argument.
judges: Garland, Wilkins, Williams